# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| THOMAS COBB III, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:18-CV-136-JEM |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Thomas Cobb, III on April 6, 2018, and Plaintiff's Opening Brief [DE 20], filed September 24, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On November 5, 2018, the Commissioner filed a response. Plaintiff did not file a reply. For the foregoing reasons, the Court affirms the Commissioner's decision.

## I.    Background

On January 22, 2008, Plaintiff filed applications for benefits alleging that he became disabled on November 1, 2007. Plaintiff's application was denied initially and upon reconsideration. On July 7, 2011, Administrative Law Judge ("ALJ") Marlene R. Abrams issued a partially favorable decision, finding Plaintiff disabled as of December 5, 2010. Plaintiff appealed and the Appeals Council denied review. On January 10, 2013, the District Court remanded the ALJ's decision pursuant to the parties' joint motion. Two additional hearings were held, on October 15, 2013 and May 6, 2014, with ALJ Romona Scales. On July 23, 2014, the ALJ issued a decision finding that Plaintiff was not disabled at any time after his alleged onset date. The Appeals Council remanded the matter back to the ALJ on January 29, 2016. An additional hearing was held

on October 28, 2016 before ALJ Scales, at which Plaintiff, with an attorney, an impartial medical expert ("ME"), and a vocational expert ("VE") testified. On July 27, 2017, the ALJ issued a decision again finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant's date last insured is June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since November 1, 2007, the alleged onset date.

3. Through the date last insured, the claimant had the following severe impairments: morbid obesity, obstructive sleep apnea ("OSA"), and degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that he can only occasionally climb ramps and stairs, balance, stoop, kneel, and/or crouch, but he can never climb ladders, ropes, or scaffolds or crawl. The work must not require driving as a condition of employment, and he must avoid all exposure to work at unprotected heights and/or around dangerous moving machinery or on slippery/uneven wet surfaces. The claimant must avoid concentrated exposure to extreme cold, and pulmonary irritants such as fumes, odors, dusts, gases, and areas of poor ventilation as well as vibration. Lastly, the claimant may require the need to alternate between sitting and standing, once each hour, for 10 minutes, while remaining at the workstation and on task.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2007, the alleged onset date, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

III. **Analysis**

Plaintiff argues that the ALJ failed to account for Plaintiff's sleep disorders in assessing the

4

RFC, and erred in evaluating the opinion of the medical expert's testimony. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

First, Plaintiff argues that the ALJ failed to a logical bridge from the evidence regarding Plaintiff's sleep apnea to the restrictions in the RFC. Plaintiff notes that although the ALJ found his sleep apnea to be a "severe impairment" at step two, the RFC does not include any limitations outlined in the regulatory definitions for "basic work activities," 20 C.F.R. § 404.1522, despite the fact that a severe impairment by definition limits an individual's capacity to perform basic work-related activities. *See* SSR 16-3p, 2017 WL 5180304, at *11 (October 25, 2017) ("A severe impairment is one that affects an individual's ability to perform basic work-related activities."). The ALJ's findings were not contradictory merely because she did not list a "basic" activity in the RFC; the term "basic work activities" refers generally to "the abilities and aptitudes necessary to do most jobs," such as "physical functions." *See* 20 C.F.R. § 404.1522(b). The ALJ addressed Plaintiff's physical capabilities in the RFC, including limitations on driving, balance, and sitting and standing for long periods. And while the ALJ was required to thoroughly explain the basis for the RFC findings, she was not required to explicitly match particular impairments to corresponding functional limitations in the RFC. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient.") (citations omitted); *Vujnovich v. Astrue*, No. 2:10-CV-43 JD, 2011 WL 1157499, at *14 (N.D. Ind. Mar. 28, 2011) (finding that an ALJ needs to "explain how the evidence supports her conclusions," but need not provide a function-by-function explanation); *Pinder v. Astrue*, No. 3:09-CV-363-TS, 2010 WL 2243248, at *6 (N.D. Ind. June 1, 2010) (explaining that while ALJs must undertake a function-by-function "assessment," the expression of a claimant's RFC need not be articulated function-by-

function) (citing SSR 96–8p, 1996 WL 374184 (July 2, 1996)). In this case, the ALJ provided a thorough narrative discussion of the record and the medical opinions. Plaintiff does not identify evidence the ALJ ignored, nor does he argue that any additional limitations would have been appropriate. *See Kinsey v. Berryhill*, No. 2:16-CV-69-PRC, 2017 WL 1101140, at \*8 (N.D. Ind. Mar. 24, 2017) ("Plaintiff does not acknowledge the ALJ's thorough discussion and treatment of the records. Nor does Plaintiff argue what additional limitations should be included in the RFC based on these impairments and symptoms or how the RFC does not account for them.").

Next, Plaintiff argues that the ALJ failed to properly consider the testimony of medical expert Dr. Keith Holan. The ALJ must evaluate all medical opinions, accounting for factors such as the relationship with the claimant, familiarity with the claimant's medical history, and whether the opinion is supported by the record. *See* 20 C.F.R. § 404.1527. Dr. Holan testified that he could not opine as to the severity of Plaintiff's narcolepsy or sleep apnea after 2010, due to a lack of medical records. AR 861 ([ALJ]: "So at this point, Doctor, you have no way of gauging the severity of the narcolepsy or sleep apnea beyond the 2010 testing, is that correct? [Dr. Holan]: "That's correct."). However, when asked how much Plaintiff would be off task due to his sleep disorders, Dr. Holan testified that Plaintiff would be off task at least ten percent of the work day. AR 865-66. The ALJ addressed Dr. Holan's testimony and found that it was "outdated and based on an incomplete record," but granted "some preference" to his opinion that Plaintiff could perform sedentary work with limitations. Plaintiff argues that the ALJ was required to specifically account for Dr. Holan's testimony that Plaintiff would be off-task for more than ten percent of the day due to his sleep disorders. Having explained the basis for her conclusions about the doctor's testimony on that topic, the ALJ was not required to explicitly consider every limitation he proposed. "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge'

between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. The ALJ provided the required logical bridge by explaining why the record Dr. Holan relied on was inadequate. *See Filus v. Astrue*, 694 F.3d 863, 868-69 (7th Cir. 2012) (holding that ALJs are "not required to afford any particular weight" to non-treating physicians' opinions, and need only "minimally articulate" their reasoning in rejecting them) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

Finally, Plaintiff alleges that the ALJ failed to discuss several instances of Plaintiff falling asleep in public places. In addressing Plaintiff's alleged symptoms, the ALJ must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain" which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 at *6, *8; *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain[] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence) (citing *Clifford*, 227 F.3d at 870-72). The ALJ discussed several examples of Plaintiff allegedly falling asleep in public places, including those cited in Plaintiff's brief. *See*, *e.g.*, AR 793 (discussing Plaintiff sleeping at hearings and in the emergency room); AR 796 (discussing Plaintiff's separation from his job after falling asleep). In each case, the ALJ evaluated whether those allegations were consistent with the other evidence and explained her reasons for finding that they were not. SSR 16-3p, 2016 WL 1119029 at *8. She was not required to recite every allegation of Plaintiff falling asleep, as long as she provided a logical bridge to her conclusions and did not "ignore [the] entire line" of evidence. *Zurawski*, 245 F.3d at 888.

More generally, the ALJ discussed at length why she found that Plaintiff's sleep disorders, and the attendant symptoms he alleged, did not prevent him from working. *See* AR 793, 796-798. The ALJ found that the medical records indicated that Plaintiff's sleep disorders were effectively

treated, which is supported by substantial evidence in the record. In September 2007, Plaintiff attended a sleep study that indicated his sleep apnea that could be resolved with a continuous positive airway pressure ("CPAP") mask. AR 320. A follow-up treatment note from February 2008 noted that Plaintiff was "ok to work/drive." AR 343. In 2008, it was found that Plaintiff was not tolerating CPAP, and bilevel positive airway pressure ("BiPAP") retitration was introduced, which was found to be "effective." AR 462. The ALJ discussed Plaintiff's treatment for his sleep disorders, and noted that while Plaintiff had reported fatigue during this period, he reported to other doctors that he was refreshed after receiving treatment. AR 797.

The ALJ also addressed Plaintiff's diagnoses of narcolepsy and sleep apnea following another sleep study in 2010. The ALJ noted that after that date, Plaintiff expressed "few symptoms or limitations" relating to his sleep until 2016, despite numerous visits to medical providers over that period, and explained why she found that record inconsistent with the symptoms he alleged. AR 802-805. The ALJ discussed the testimony of the medical expert at the October 2016 hearing, Dr. Ashik Jilhewar, who stated that the medical record did not corroborate Plaintiff's allegations of constantly falling asleep without control. AR 807. The ALJ likewise explained why she found that this was inconsistent with Plaintiff's allegations. *Id*.

While Plaintiff may not agree with the ALJ's analysis, the Court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgement for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The ALJ thoroughly analyzed the record, Plaintiff's reported symptoms, and the medical opinions. Because the ALJ's conclusions are supported by substantial evidence and an adequate discussion of the issues, the decision must stand. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **DENIES** the relief requested in Plaintiff's Opening Brief [DE 20] and **AFFIRMS** the Commissioner's decision.

SO ORDERED this 9th day of September, 2019.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:    All counsel of record